**Harvey EARVIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 59906.

Court of Criminal Appeals of Texas, En Banc.

Jan. 10, 1979.

Rehearing En Banc Denied Feb. 28, 1979.

Don W. Duran, Lufkin, for appellant.

Gerald A. Goodwin, Dist. Atty., Lufkin, for the State.

## OPINION

KEITH, Commissioner.

This is an appeal from a conviction for the offense of capital murder wherein the punishment was assessed at death. V.T. C.A., Penal Code Sec. 19.03 (1974), and Vernon's Ann. C.C.P. Art. 37.071 (Supp.1978–79).

Shortly before dark on December 7, 1976, appellant and his girl friend, 15-year-old Feleca Farrell, went to the rear of a filling station on Raguet Street in Lufkin for the purpose of robbing the attendant of the cash he had collected during the day. Appellant had used cosmetic makeup in painting a mustache on his face and was wearing an Afro-type wig. He was carrying a single-barrel twenty-gauge shotgun.

As he and his companion approached the filling station from the rear, they observed the deceased, Ertis Brock, going toward his car parked nearby carrying a bank bag and some papers. Appellant got very close to him and told Brock to "Hold it, mother fucker", at which time, according to Farrell, the deceased reached into his back pocket, whereupon appellant shot him in the chest. Appellant and Farrell then ran from the scene, neither taking the money, and appel-

lant dropped the gun some distance from the scene of the murder.

Both parties were apprehended within a few days and each confessed to the details of the crime, and appellant's confession comes to us without challenge. The State made out its case by the testimony of Farrell and Bill Mickens with whom appellant had planned the robbery several days earlier. Mickens drove appellant and Farrell from the Congo Club to a point near the filling station where Brock was killed. Appellant did not testify nor did he offer any evidence in his own behalf upon the guilt-innocence stage of the trial.[1]

Appellant does not challenge the sufficiency of the evidence to sustain the conviction nor does he complain of procedural errors in the charge. In his first ground of error the complaint is made that the trial court "failed to properly apply the standards of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and erroneously allowed the exclusion for cause of veniremen who had scruples concerning capital punishment." He then attacks the court's action in excusing eleven veniremen who either failed or refused to qualify to serve under the terms of V.T. C.A., Penal Code Sec. 12.31(b) (1974).[2]

After a careful and painstaking search of the record, we now state unequivocally that appellant did not object at any time when any of the eleven prospective jurors was excused. In several instances he questioned the particular venireman concerning the person's feelings toward infliction of the death penalty—often thanking the venireman for the answers given—but never did he interpose an objection to the action of the court in excluding such person from the panel.

All of appellant's complaints under ground one were considered and overruled by this Court in *Hughes v. State,* 562 S.W.2d 857, 861 (Tex.Cr.App.1978), wherein we recognized the continuing vitality of *Witherspoon* but followed our prior holdings that "[f]ailure to object to the improper exclusion of veniremen waives that right and such exclusion cannot be considered on appeal." Ground of error number one is overruled.

In his second ground of error, appellant contends that it was error for the trial court to admit a colored photograph of the deceased showing the bullet hole in the chest. Appellant's reliance upon *Burns v. State,* 388 S.W.2d 690 (Tex.Cr.App.1965), is misplaced since *Burns* was specifically overruled by *Martin v. State,* 475 S.W.2d 265, 268 (Tex.Cr.App.1972), and we have declined several invitations to reconsider the question. See, e. g., *Dugger v. State,* 543 S.W.2d 374, 378 (Tex.Cr.App.1976).

In *Hughes v. State,* 563 S.W.2d 581, 588 (Tex.Cr.App.1978), we again considered a similar contention and used this language:

"In *Alford v. State,* Tex.Cr., 505 S.W.2d 813, this Court said:

'. . . a photograph, proved to be a true representation of the person, place or thing which it purports to represent, is competent evidence of those things of which it is material and relevant for a witness to give a verbal description.'"

We find no merit in ground of error number two and it is overruled.

Appellant next complains of the admission into evidence of State's Exhibits Nos. 10 and 12, being the outer jacket and sweater worn by the deceased at the time of the shooting.[3] He contends that the clothing

1. Appellant attempted to enter a qualified plea of guilty whereby he admitted shooting the deceased but claiming "I didn't have no intention of killing the man whenever I went there." The trial court properly refused to accept such plea and interposed a plea of not guilty to the indictment.

2. "Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

3. The court sustained appellant's objection to State's Exhibit No. 11, the shirt worn by deceased, apparently because it had blood stains thereon.

was admissible only if it served to illustrate some point, solve some question, or throw some light on a matter in dispute. He argues that since there was ample evidence of the nature and extent of the wound, the location of the entrance into the body, and the cause of death, the clothing could serve only to inflame and prejudice the jury against him.

■ Although the ground of error is couched in terms of "bloody clothing", we are not referred to specific pages in the record wherein such claim is supported by testimony. However, since the extreme penalty was assessed, we have made an independent search of the record and do not find that the record supports a charge that the clothing was in fact bloody.

■ Moreover, Detective Lt. Goodwin of the Lufkin Police Department used the clothing to demonstrate to the jury the angle of the shot, the closeness of the gun to the body when the shot was fired, and was able to demonstrate the relative position of the parties at the time of the encounter. The autopsy revealed not only pellets from the shell but some plastic fragments had lodged in the body of the deceased. Goodwin was able to demonstrate that the gun was extremely close to the deceased's body when it was discharged. We find no error in the admission of the articles of clothing, assuming it be shown that such articles were in fact bloody.

We do not find the supporting case law cited by appellant to be in point or persuasive. In *Garcia v. State*, 537 S.W.2d 930, 935 (Tex.Cr.App.1976), a bloody sheet used to gag a jailer and to assist in the perpetration of the offense was held admissible, the Court saying:

"It has been held that bloody clothing is admissible if it has relevance such that a verbal description thereof would be admissible. *Short v. State*, 511 S.W.2d 288 (Tex.Cr.App.1974); *Harrison v. State*, 501

S.W.2d 668 (Tex.Cr.App.1973), and cases cited therein."

■ While the holes in the articles of clothing could have been described verbally, the alignment of the holes with the wound upon the body—taken along with the testimony of the physician who conducted the autopsy—rendered such articles competent and relevant evidence. As stated in *Harrison v. State*, 501 S.W.2d 668, 669 (Tex.Cr. App.1973):

"By the device of stipulations, the appellant could not deprive the State of the duty and the function of presenting to the jury all relevant evidence, nor avoid facing the full facts of the crime."

Finding no merit on ground three, it is overruled.

We experience some difficulty in coming to grips with appellant's fifth ground of error reproduced in the margin.[4] A study of the ground of error and the argument thereunder leads to the belief that he complains of two distinct matters, (1) "A reliable prediction of the probability defined in Article 37.071(b)(2) is impossible"; and (2) that there is *no* evidence in the record supporting the probability that the "Appellant will commit criminal acts of violence or constitute a continuing threat to society in the future."

The first facet of the complaint is answered adversely to appellant's contentions in *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr. App.1975), affirmed, 428 U.S. 262, 49 L.Ed.2d 929, 96 S.Ct. 2950 (1976). See also *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr. App.1977), and authorities therein cited.

The second prong of this complaint is not susceptible of as simple an answer. Pursuant to Art. 37.071(b)(1), (2), and (3), V.A.C.C.P., the court submitted questions to the jury inquiring if they found from the evidence beyond a reasonable doubt (1) that the conduct of the appellant which caused the death of the deceased was committed

---

4. "Ground of Error No. Five: Article 37.071, Vernon's Texas Code of Criminal Procedure, is unconstitutional in that the prediction of a probability of future dangerousness required by Texas law and made in Appellant's case as the basis for the imposition of the death penalty is so uncertain, vague, unreliable and prone to error on the side of overinclusion that it fails to channel the sentencing decision patterns of juries and is arbitrary."

deliberately and with reasonable expectation that the death of the deceased or another would result; (2) that there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) that the conduct of appellant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. The jury answered each question unanimously and in the affirmative.

Appellant challenges only the answer to the second question, his argument being that in the absence of evidence supporting an affirmative answer, the charge is arbitrary and violates his Eighth and Fourteenth Amendment rights. He cites only *Smith v. Goguen,* 415 U.S. 566, 576, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974).[5]

In *Robinson v. State,* supra, the Court noted that the provisions of Art. 37.071(a), V.A.C.C.P., concerning the presentation of evidence which the " 'court deems relevant to sentence' " and listed several matters which the jury could consider in determining whether or not a defendant would be a continuing threat to society.[6]

We compare such guidelines with our record noting:

(a) The defendant in our case had no prior criminal record, consequently there was no testimony as to the "severity of his prior criminal conduct."

(b) When we look to the age of the defendant, we find that he was eighteen years old when the crime was committed and nineteen at the time of trial.

(c) There is no testimony that at the time of the commission of the offense he was acting under duress or under the domination of another.

(d) Nor is there any evidence that defendant was under any form of mental or emotional pressure or any form of insanity or inflamed emotions.

State's counsel, pointing to language found in *Burns v. State,* 556 S.W.2d 270, 280 (Tex.Cr.App.1977), allowing the jury to consider the evidence adduced at the guilt/innocence stage in answering the second question as to future conduct, refers to the cold blooded shooting of the seventy-five-year-old victim, to the act of appellant in running away and later looking at television that night without even attempting to learn the fate of the shooting victim. Counsel also mentions the testimony of fourteen-year-old Anthony Farrell, the younger brother of his fifteen-year-old girl friend, that when appellant told him of the murder two days after the crime he laughed and made a joke about it.

Olee Howard, appellant's cell mate in jail, testified that appellant went into the cell of an elderly sleeping drunk man, where he and another inmate stuffed paper up the trouser leg of the sleeping man, following which appellant set the paper on fire. Neal Cole, the man whose leg was burned, testified to needing medical attention for the burns and the scars on his leg resulting therefrom. Other testimony related to appellant striking another old man in the jail who had cursed appellant for taking his food from his tray while asleep.

Jailor Stevenson, who "practically lived with [appellant] daily for eight months", told of problems created in the jail by appellant; that he was boss of the cell block; and that he had a jovial attitude toward his crime.

---

5. This language found in 415 U.S. at 576, 94 S.Ct. at 1249 may be the holding which counsel seeks to invoke: "Where inherently vague statutory language permits such selective law enforcement, there is a denial of due process."

6. "This Court has stated that in determining the likelihood of whether or not a defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and the severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps, than insanity but more than the emotions of the average man, however inflamed, could withstand." (citations omitted)

Sheriff McBride said that he never observed any signs of sorrow or remorse. Deputy Sheriff Hight told of appellant being "cocky" and carefree and "I have never saw [sic] a remorseful minute in him."

To our short resume of the evidence of the murder, we add that the record shows without contradiction that appellant brutally shot and killed an elderly and unarmed man; that the robbery had been planned for at least two days while he and his confederate Mickens obtained the shotgun and determined just *what business establishment would be robbed.*

■ Notwithstanding the age of appellant and his lack of a prior criminal record, we find that the record as a whole supports the jury's affirmative answer to the second question concerning future conduct. Under Art. 37.071(a), V.A.C.C.P., the court is authorized to admit any evidence which is relevant to the punishment, and the jury is authorized to consider this relevant evidence along with that adduced at the guilt-innocence phase of the trial. *Ex parte Granviel,* 561 S.W.2d 503, 516 (Tex.Cr.App. 1978). From our review of the record as a whole, we do not find error has been shown and ground five is overruled.

■ In his sixth ground of error, appellant contends that death by intravenous injection pursuant to Arts. 43.14 and 43.18, V.A.C.C.P. (1966–1977 Supp.) is a potentially cruel and highly unusual means of execution which is forbidden by the Eight Amendment to the Constitution of the United States and deprives appellant of due process of law and equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. No authorities are cited supporting the argument.

We considered this contention at length in *Ex parte Granviel,* supra, and found it to be without merit and now adhere to that ruling. See also *Felder v. State,* 564 S.W.2d 776, 779 (Tex.Cr.App.1978). Ground of error number six is overruled.

■ Finally, appellant contends that his trial counsel failed to render adequate and effective assistance at the trial, enumerating ten instances wherein counsel failed to interpose "timely and adequate objections." This is followed by the conclusion that "[s]uch evidence listed above is inadmissible and highly inflammatory and greatly prejudiced the jury against the Appellant."

We note at the outset of this discussion that counsel had been retained by appellant's foster father whom he had represented for twenty-five years; that trial counsel was an experienced lawyer having tried many criminal cases over a twenty-seven-year period. And, as we said in *Curtis v. State,* 500 S.W.2d 478, 481 (Tex.Cr.App. 1973): "Appellant tendered his lawyer an extremely weak hand to play in his defense, but it was well played."

Many of appellant's contentions are answered by the authoritative opinion in *Hunnicutt v. State,* 531 S.W.2d 618 (Tex.Cr.App. 1976), wherein many cases are cited. The following quotations are particularly applicable to appellant's present complaints:

■ (a) "[C]ounsel having been retained, any claim of incompetency or lack of effective assistance of counsel cannot be imputed to the State." (531 S.W.2d at 625)

■ (b) "Appellant's contention that trial counsel's failure to actively contest the admission of his confession does not reflect ineffective assistance of counsel absent a showing that the confession was obtained involuntarily." (Id. at 624)

(c) "Our review of the record does not reflect any willful misconduct by retained counsel without appellant's knowledge which amounts to a breach of legal duty so as to deny the appellant of the effective assistance of counsel." (Id. at 626)

There is no attempt at showing that appellant had any tenable objection to the identification of the shotgun (recovered with the assistance of Billy Mickens) or of the wig worn by appellant at the time of the murder. His complaint that his counsel failed to ascertain the length of the sentence of accomplice witness Mickens is refuted by the record. In cross-examination of Mickens, counsel asked:

"Q. Well, you pleaded guilty to the robbery didn't you?

"A. Yes, sir.

"Q. How much time are you pulling?

"A. Fifty."

We have examined each of the specific complaints mentioned in the brief and find no merit to the contentions now advanced. Appellant's guilt was established by overwhelming evidence including that of two accomplice witnesses and his own confession. We agree with this assessment by State's counsel:

"[The] evidence of Appellant's guilt was so overwhelming that trial strategy dictated that trial counsel assume a posture other than that of firey and righteous indignation against the State's case."

While the hindsight of post-trial appointed counsel may perceive instances wherein trial counsel was not perfect and his strategy was not infallible, that is not the test we apply when meeting such complaints. We have read the entire record and conclude that counsel's defense was not such as to be a breach of a legal duty. The seventh ground of error is overruled.

The judgment of the trial court is affirmed.

Opinion approved by the Court.

CLINTON, J., not participating.