James DEMOUCHETTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 61160.

Court of Criminal Appeals of Texas,
En Bank.

Nov. 7, 1979.
Rehearing Denied Dec. 19, 1979.

Francis L. Williams, on appeal only, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael C. Kuhn and Donald H. Dawson, Jr., Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for capital murder. The jury answered affirmatively the special issues submitted pursuant to Article 37.071, Vernon's Ann.C.C.P., and, accordingly, punishment was assessed at death.

The sufficiency of the evidence to sustain appellant's conviction for the robbery-murder is not challenged. On October 18, 1976, Jeoffrey Hambrick was the manager of a Pizza Hut restaurant in Houston. Around midnight, about closing time, appellant and his brother Chris entered the Pizza Hut, and Chris ordered a beer. The two then went and sat down in a rear booth. Shortly thereafter, Scott Sorrells, the deceased, and his roommate, Robert White, entered the Pizza Hut. Scott, who was an employee there, was to have met Hambrick at closing time, in order to learn how to do the bookkeeping. Hambrick, Scott and Robert sat down together in the front of the restaurant. Scott was acquainted with Chris Demouchette, so he asked Chris and appellant to join the others at the front. Appellant and his brother did so, and the five sat together for a short time, "making small talk." Hambrick testified that appellant and his brother were trying to get him to give them a free pizza, which Hambrick did not want to do. He testified that he was trying to stall them until 12:30 a. m., when he could ask them to leave, but that he was getting nervous about turning them down.

Hambrick testified that two conversations were going on at the table, when he heard Robert White say, "I would think twice before I pulled that trigger." He looked up and saw appellant, with his arm extended about a foot from Robert, and saw him shoot Robert in the face. Robert fell forward onto the table. Hambrick was still turning his head when appellant pointed the gun at him and fired. The shot hit him in the head and knocked him back against the booth. He then fell forward on the table. Immediately thereafter, Hambrick heard another shot and realized that Scott had been shot, too. Hambrick laid still and played dead. After Scott was shot, Hambrick heard the pair's footsteps in the back room area, and heard them rummaging around. Then the two came back out to the front, and he heard one say "Get the keys." He then heard footsteps coming toward where he was lying.

Hambrick testified that Scott was still alive, because he could hear his labored breathing and a gurgling in his throat. When the footsteps reached the area, Hambrick heard another shot and Scott fell forward on the table, breaking it. Hambrick then heard the click of the gun, but no shot fired. After he heard the click, he felt himself being picked up off the table and his keys were removed from his pocket. He heard the keys jangling and someone state, "Out the back door, Chris." The two then left the restaurant. After waiting for a while, Hambrick got up and called the police.

The police arrived and found Scott dead and Hambrick wounded. Robert died shortly after reaching the hospital. It was later determined that money from the cash register and a stereo receiver were taken from the Pizza Hut. Other evidence was introduced to substantiate appellant's guilt of the murders.

In his first ground of error, appellant contends that the trial court abused its discretion in overruling his motion for a change of venue. The record reflects that a hearing was held on appellant's motion,

during which he offered testimony by inmates in the Harris County Rehabilitation Center that he could not receive a fair and impartial trial in Harris County. The State offered rebuttal evidence that appellant could receive a fair and impartial trial in that county. After hearing this evidence, the trial court overruled appellant's motion.

We are cognizant that the question of whether a change of venue should be granted because of prejudicial publicity is one of constitutional dimension and that the test to be applied by the court is whether outside influences affecting the community's climate of opinion as to a defendant are so inherently suspect that the resulting probability of unfairness requires suitable procedural safeguards. See *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); see also, *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962).

An examination of the exhibits introduced at the hearing indicates that the information contained in the news reports was accurate and was apparently placed there for the purpose of informing the public of current events. See *Bell v. State,* 582 S.W.2d 800 (Tex.Cr.App.1979); *Adami v. State,* 524 S.W.2d 693 (Tex.Cr.App.1975); *Morris v. State,* 488 S.W.2d 768 (Tex.Cr. App.1973); *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App.1967). Further, the publicity concerning this crime was by no means substantial. The testimony that appellant could not receive a fair and impartial trial in Harris County was contradicted by testimony presented by the State.

In the instant case, the trial court was presented with conflicting testimony with respect to whether appellant could obtain a fair trial in the local community because of pretrial publicity. This issue was decided adversely to appellant's contentions when the trial judge, as the trier of facts, overruled the motion for a change of venue. *Bell v. State,* supra; *Von Byrd v. State,* 569 S.W.2d 883 (Tex.Cr.App.1978); *Freeman v. State,* 556 S.W.2d 287 (Tex.Cr. App.1977); *Ransonnette v. State,* 522 S.W.2d 509 (Tex.Cr.App.1975). We hold that the trial court did not abuse its discretion in overruling appellant's motion. This ground of error is overruled.

In his second ground of error, appellant attacks the sufficiency of his indictment for capital murder, contending that it was defective for its failure to allege the constituent elements of the offense of robbery. We have previously held that a capital murder indictment is not defective because the elements of robbery are not set out in the indictment charging murder during the commission or attempted commission of robbery. *Hammett v. State,* 578 S.W.2d 699 (Tex.Cr.App.1979); *Livingston v. State,* 542 S.W.2d 655 (Tex.Cr.App.1976); see *Granviel v. State,* 552 S.W.2d 107 (Tex. Cr.App.1976). Under the new Penal Code, an indictment charging one offense during the commission of another crime need not allege the elements of the latter offense. See *Gonzales v. State,* 517 S.W.2d 785 (Tex. Cr.App.1975); *Watts v. State,* 516 S.W.2d 414 (Tex.Cr.App.1974). This ground of error is overruled.

In his third ground of error, appellant contends that the in-court identification of him by witnesses Jeoffrey Hambrick and Billy Harper was tainted by impermissibly suggestive photographic arrays. The trial court held a hearing out of the presence of the jury on the admissibility of the in-court identification.

The record reflects that at about 3–4 p. m. on the afternoon after the offense, Officer Tom Klawiter took five photographs to Hambrick in the hospital. At this time, appellant's picture had not been published or televised. The pictures were handed to Hambrick, and he picked appellant's picture out of the group. All were pictures of black males. There was some conflicting evidence about whether the names were on the backs of the photographs, but Officer Klawiter testified that appellant's name

was not on the back of his picture. He further testified that Hambrick had not seen any names on the backs of the photographs before he made his identification of appellant. At trial, Hambrick testified that immediately prior to the shootings, he had observed appellant in the Pizza Hut for about twenty minutes, and that he had engaged in a brief conversation with him. He further stated that the photographic array he had observed was not suggestive, but that his identification of appellant was based upon his observing appellant at the time of the offense. The trial court ruled that Hambrick's identification of appellant was of independent origin, based upon his observations of appellant at the time ·and place of the offense under normal lighting, and that his subsequent in-court identification was not tainted.

Witness Billy Harper testified that he had observed appellant and his brother enter the Pizza Hut a few minutes before closing. He testified that the lighting was good in the restaurant, and he was in appellant's presence for approximately five minutes, and that his in-court identification of appellant was based on his observations at that time. Officer D. L. Moorman testified that he took a statement from Harper on the day following the murders. At that time, he showed Harper five pictures. From that group, Harper identified appellant and his brother as the two he had seen on the night of the offense. The photographs, introduced into evidence outside the jury's presence, had plates under the faces of the suspects, on which appeared a number, and in small letters, a date. Appellant contends that this photographic array was impermissibly suggestive because only the pictures of appellant and his brother had the date of "October 18" on the plates. However, Harper testified that he did not recall any numbers on the pictures when he saw them, and reiterated that his identification was based upon his observation of appellant at the Pizza Hut.

We find ample evidence to support the trial court's finding that Hambrick's and Harper's identifications of appellant were based upon their independent views of appellant and not based upon either photographic display. Thus, the in-court identification of appellant by these witnesses was clearly admissible. *Komurke v. State,* 562 S.W.2d 230 (Tex.Cr.App.1978); *Bermudez v. State,* 533 S.W.2d 806 (Tex.Cr.App.1976); *Clay v. State,* 518 S.W.2d 550 (Tex.Cr.App. 1975); *Thompson v. State,* 480 S.W.2d 624 (Tex.Cr.App.1972). Further, we find from our examination of the record that the photographic arrays were not suggestive. This ground of error is overruled.

In his fourth ground of error, appellant contends that the evidence is insufficient to support the jury's finding that there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. Article 37.071(b)(2), Vernon's Ann.C.C.P.

At the punishment phase of the trial, the State introduced into evidence appellant's two prior convictions, one for theft and one for burglary. The State then presented the testimony of John Womack, Assistant Warden at the Clemons Unit of the Texas Department of Corrections, who testified that appellant's reputation for being a peaceful, law-abiding citizen was bad. Howard Mitchell, Assistant Warden at the Darrington Unit of the Texas Department of Corrections, also testified that appellant's reputation for being a peaceful, law-abiding citizen was bad. Further, Paul Jacka, Warden at the Jester Unit of the Texas Department of Corrections, similarly testified as to appellant's bad reputation. Senior Lieutenant Robert Killbuck of the Harris County Sheriff's Department also testified that appellant's reputation for being a peaceful, law-abiding citizen was bad. Appellant presented no evidence in mitigation of punishment.

■ It is well settled that in assessing punishment, the jury may consider all of the evidence adduced at trial on guilt or innocence. *O'Bryan v. State,* 591 S.W.2d 464 (Tex.Cr.App., delivered September 26, 1979); *Duffy v. State,* 567 S.W.2d 197 (Tex. Cr.App.1978); *Felder v. State,* 564 S.W.2d 776 (Tex.Cr.App.1978); *Brock v. State,* 556

S.W.2d 309 (Tex.Cr.App.1977); *Shippy v. State,* 556 S.W.2d 246 (Tex.Cr.App.1977); *Moore v. State,* 542 S.W.2d 664 (Tex.Cr. App.1976). The calculated nature of a defendant's acts and the forethought with which he executed his crime is certainly probative evidence of his propensity to commit future acts of violence. See *O'Bryan v. State,* supra; *Brooks v. State* (Tex.Cr.App., delivered March 21, 1979); *Earvin v. State,* 582 S.W.2d 794 (Tex.Cr.App.1979); *Felder v. State,* supra; *Duffy v. State,* supra; cf. *Warren v. State,* 562 S.W.2d 474 (Tex.Cr. App.1978).

In the instant case, appellant went to the Pizza Hut armed. The fact that he went armed is of probative value. See *Duffy v. State,* supra; *Felder v. State,* supra. Inside, he waited until all the persons inside the restaurant were together, and then shot each in rapid succession from close range. He and his brother then ransacked the office and took money and stereo equipment. Upon discovering that one of the victims was still alive, he shot him a second time. Apparently, he tried to shoot another of the victims again, but the gun did not fire. Appellant obviously intended to kill all three of the men, but succeeded in only killing two and seriously injuring the third. The fact that even after committing the robbery, he obviously intended to kill all witnesses to the robbery is certainly probative evidence.

There was no evidence that appellant was under the influence or domination of anyone else; we have previously stated that this is probative evidence on special issue number two. *O'Bryan v. State,* supra; *Earvin v. State,* 582 S.W.2d 794 (Tex.Cr. App.1979); *Duffy v. State,* supra; *Hovila v. State,* 562 S.W.2d 243 (Tex.Cr.App.1978); *Robinson v. State,* 548 S.W.2d 63 (Tex.Cr. App.1977); *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975). There is no evidence that appellant was under mental or emotional pressure which might mitigate his actions; the presence or absence of such pressure is also probative evidence. *O'Bryan v. State,* supra; *Earvin v. State,* supra; *Duffy v. State,* supra; *Hovila v.*

*State,* supra; *Robinson v. State,* supra; *Jurek v. State,* supra.

The evidence also reflects that appellant had two prior felony convictions. Although none of his prior offenses involved violence against persons, they were nevertheless probative of appellant's propensity to commit criminal acts. See *Starvaggi v. State,* 593 S.W.2d 323 (Tex.Cr.App.1979); *Duffy v. State,* supra; *Felder v. State,* supra.

The State also offered evidence that appellant's reputation for being a peaceful, law-abiding citizen was bad. The jury may have concluded that the testimony of three wardens from the Texas Department of Corrections was particularly probative of the special issues which would determine whether appellant would be sentenced to life imprisonment or death.

Thus, on the record before this Court, it appears that appellant's entire conduct exhibited a wanton and callous disregard for human life; the jury was justified in finding that the aggravating factors outweighed any mitigating factors, and the evidence is sufficient to support their finding that there is a probability that this appellant would constitute a threat to society. See *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). See and compare *O'Bryan v. State,* supra; *McMahon v. State,* 582 S.W.2d 786 (Tex.Cr.App.1978); *Brooks v. State,* supra; *Earvin v. State,* supra; *Starvaggi v. State,* supra; *Villarreal v. State,* 576 S.W.2d 51 (Tex.Cr.App.1978); *Muniz v. State,* 573 S.W.2d 792 (Tex.Cr.App. 1978); *Adams v. State,* 577 S.W.2d 717 (Tex.Cr.App.1979); *Bodde v. State,* 568 S.W.2d 344 (Tex.Cr.App.1978); *Von Byrd v. State,* supra; *Duffy v. State,* supra; *Felder v. State,* supra; *Brock v. State,* 556 S.W.2d 309 (Tex.Cr.App.1977); *Shippy v. State,* supra; *Granviel v. State,* supra; *Moore v. State,* supra. This ground of error is overruled.

The judgment is affirmed.