ACCEPTED
01-17-00176-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/25/2018 4:38 PM
CHRISTOPHER PRINE
CLERK

**Appeal No. 01-17-00176-CR**

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/25/2018 4:38:48 PM
CHRISTOPHER A. PRINE
Clerk

**In the First Court of Appeals**

_____

**BRIAN THOMAS SPINKS, Appellant**

**Vs.**

**THE STATE OF TEXAS, Appellee.**

_____

**On Appeal from the 300th Judicial District Court
of Brazoria County,
Cause No. 78734-CR.**

_____

## <u>MOTION FOR REHEARING</u>
## <u>FOR APPELLANT, BRIAN THOMAS SPINKS</u>

_____

<u>To the Honorable Justices of the First Court of Appeals:</u>

Comes now appellant, Brian Thomas Spinks, by and through his attorney of record, Cary M. Faden, and files this her Motion For Rehearing of the May 15, 2018, decision of the First Court Of Appeals of Texas in *Spinks v. State*, No. 01-17-00176-CR, slip op. at 1-12, (Tex. App. - Houston (1st Dist.), May 15, 2018, pet. pending), and would respectfully show the Court the following:

1

## I.

On May 5, 2016, Appellant, was indicted for the first degree felony offense of Attempted Capital Murder; (1 CR at 6). The offense was alleged to have occurred on or about April 9, 2016. (1 CR at 6). On February 13, 2017, Appellant pleaded not guilty to the indictment. (2 RR at 4). After a jury trial, the jury assessed Appellant's punishment at confinement in the Texas Department of Criminal Justice-Institutional Division for a period of sixty years, and a $5,000.00 fine. (1 CR at 162). On February 24, 2017, Appellant timely filed his notice of appeal. (1 CR at 170).

In the Brief for Appellant, one point of error was briefed. Appellant files this his Motion For Rehearing wherein, Appellant is concerned as to given the Court failed to hear Oral Argument in this attempted capital murder appeal, wherein it appears clear that this Court failed to properly address and apply the law as it related to Appellant's Point of Error One, issue and again argues on appeal Appellant asserts that the evidence adduced at trial was legally insufficient to prove that Appellant was guilty of attempted capital murder. It is Appellant's contention that given the tenor of the Opinion, this Court has wholly failed to reach all of the merits of Appellant's arguments and misconstrued Appellant's argument as to the Brief for Appellant, and how said application will affect Appellant's case.

## II.

In its opinion this Court responded to Appellant's point of error one and held:

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction for attempted capital murder because he did not intend to cause Deputy Harper's death, but was acting in self-defense in order to stop Harper "from choking [him] to death in [Harper's] attempt to detain [him]."

A person commits murder if he intentionally or knowingly causes the death of another person. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011); *Temple v. State,* 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). A person commits capital murder when he commits murder under section 19.02(b)(1) and the murder is committed upon "a peace officer . . . who is acting in the lawful discharge of an official duty and who the person knows is a peace officer." TEX. PENAL CODE ANN. § 19.03(a)(1) (Vernon Supp. 2017); *see also* TEX. CODE CRIM. PROC. ANN. art. 2.12 (Vernon Supp. 2017) (defining peace officer). A person commits the offense of attempted capital murder if, with specific intent to commit capital murder, he "does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2011); *see also Herrin v. State*, 125 S.W.3d 436, 440 n.5 (Tex. Crim. App. 2002) (setting forth elements of criminal attempt).

3

"Intent is almost always proven by circumstantial evidence." *Trevino v. State,* 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) ("Direct evidence of the requisite intent is not required . . . ."); *Smith v. State,* 56 S.W.3d 739, 745 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims." *Manrique v. State,* 994 S.W.2d 640, 649 (Tex. Crim. App. 1999). A jury may also infer knowledge from such evidence. *See Stahle v. State*, 970 S.W.2d 682, 687 (Tex. App.—Dallas 1998, pet. ref'd); *Martinez v. State*, 833 S.W.2d 188, 196 (Tex. App.—Dallas 1992, pet. ref'd).

Further, a firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2017); *Sholars v. State,* 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). And the intent to kill a complainant may be inferred from the use of a deadly weapon in a deadly manner. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Watkins v. State,* 333 S.W.3d 771, 781 (Tex. App.—Waco 2010, pet. ref'd). If a defendant uses a deadly weapon in a deadly manner, the inference of intent to kill is almost conclusive. *Watkins,* 333 S.W.3d at 781; *Trevino,* 228 S.W.3d at 736. "[T]he most obvious cases and the easiest ones in

which to prove a specific intent to kill, are those . . . in which a firearm [is] used and [is] fired . . . at a person." *Godsey v. State,* 719 S.W.2d 578, 581 (Tex. Crim. App. 1986).

Here, Deputy Harper testified that appellant pointed a firearm at him while he and appellant were standing up "face[-]to[-]face, . . . within a foot of each other." Harper, who did not have a firearm or other weapon drawn at that time, grabbed the "muzzle" of the firearm "to try to keep [appellant] from pointing it in [his] direction." While Harper was still holding the muzzle, appellant shot him in the stomach.

Gercia similarly testified that he saw appellant and Deputy Harper initially engaged in an altercation on the ground, but when appellant stood up, he pointed a firearm at Harper. He also saw Harper grab the firearm in appellant's hand, and he heard it discharge. Further, appellant also admitted that he shot a firearm at Harper and knew Harper was a "peace officer."

Although on appeal appellant argues that the evidence is legally insufficient to support his conviction for attempted capital murder because he shot Deputy Harper in self-defense and did not intend to kill him, we note that the jury charge in this case included an instruction on self-defense. And even though appellant testified that he "feared for [his] life," shot at what he thought was Harper's shoulder, and was not trying to kill Harper, but only to "release [Harper's] arm," it was for the jury to

5

determine appellant's credibility and the weight to be given to his testimony. *See Adames v.* State, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. App. 2010). Further, for the evidence to be sufficient, the State "need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that appellant intended to cause the death of Deputy Harper, a peace officer, and committed "an act amounting to more than mere preparation." *See* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2011), § 19.03(a)(1) (Vernon Supp. 2017). Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction. The First Court overruled appellant's sole issue.

III.

Appellant cites to relevant legal authorities and provides substantive analysis concerning Points of Error One as was best argued from the record made by trial counsel. In Point of Error One, clearly, it was Appellant's trial strategy that the evidence is insufficient to sustain a finding that Harper's attempted murder was committed deliberately and with the expectation that death would result. See TEX.

6

CRIM. PROC. CODE art. 37.071(b)(1). The jury was instructed "Now if you find from the evidence beyond a reasonable doubt that on or about the 9th day of April, 2016, in Brazoria County, Texas, the defendant, BRIAN THOMAS SPINKS, with the specific intent to commit the offense of Capital Murder, did then and there attempt to intentionally or knowingly cause the death of an individual, namely, Brian Harper, and the said Brian Harper was then and there a peace officer who was acting in the lawful discharge of an official duty, and the defendant knew Brian Harper was a peace officer, by shooting Brian Harper with a firearm, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended; then you will find the defendant guilty of the offense of Attempted Capital Murder as alleged in the indictment; or if you find from the evidence beyond a reasonable doubt that on or about the 9th day of April, 2016, in Brazoria County, Texas, the defendant, BRIAN THOMAS SPINKS, with the specific intent to commit the offense of Capital Murder, did then and attempt to intentionally or knowingly cause the death of an individual, namely, Brian Harper, and the said Brian Harper was then and there a peace officer who was acting in the lawful discharge of an official duty, . and the defendant knew Brian Harper was a peace officer, by shooting at Brian Harper with a firearm, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended; then you will find

7

the defendant guilty of the offense of Attempted Capital Murder as alleged in the indictment." Also, the jury was instructed, ""Attempt" to commit an offense occurs, if, with specific intent to commit an offense, a person does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended.

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result."

The evidence at trial demonstrates that Appellant was in possession of a loaded gun, and shot Harper from a distance of three to five feet, Appellant's made statements claiming a self defense shooting as a result of a choking or excessive force used by Harper, and a struggle. Evidence of a struggle does not negate the inference of deliberate conduct. *Livingston v. State*, 739 S.W.2d 311, 339 (Tex. Crim. App.1987), cert. denied, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). The evidence does not support the inference that a jury could have reasonably concluded that appellant's mere possession of a loaded gun was probative of his deliberate behavior. Id.; *Demouchette v. State*, 591 S.W.2d 488 (Tex. Crim. App.1979), cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981).

Texas Penal Code section 19.03(a)(1) provides that a person commits capital murder if the person commits murder of a peace officer or fireman who is acting in

the lawful discharge of an official duty and who the person knows is a peace officer or fireman. As used in Texas Penal Code section 19.03(a)(1), "in the course of committing" is defined as conduct occurring during an attempt to commit, during the commission of, or in immediate flight from, the forbidden behavior. *See, e.g., Rivera v. State,* 808 S.W.2d 80, 93 (Tex. Crim. App. 1991). Appellant's intent at that time was not to kill Officer Harper, but rather to remove Officer harper from choking Appellant to death in his attempt to detain Appellant. *See, e.g., Laster v. State,* 275 S.W.3d 512, 524-25 (Tex. Crim. App. 2009) (a defendant's intent may be discerned from the surrounding circumstances).

Appellant argues that the evidence is insufficient to show that Appellant did then and there with the specific intent to commit the offense of Capital Murder, did then and there attempt to intentionally or knowingly cause the death of an individual, namely, Brian Harper, and the said Brian Harper was then and there a peace officer who was acting in the lawful discharge of an official duty, and the defendant knew Brian Harper was a peace officer, by shooting Brian Harper with a firearm, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended; or that Appellant did then and there with the specific intent to commit the offense of Capital Murder, did then and there attempt to intentionally or knowingly cause the death of an individual, namely, Brian Harper,

9

and the said Brian Harper was then and there a peace officer who was acting in the lawful discharge of an official duty, and the defendant knew Brian Harper was a peace officer, by shooting at Brian Harper with a firearm, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

***Intent Element***

Capital murder under Texas Penal Code § 19.03(a)(1) is a "result of conduct" offense. *Kinnamon v. State*, 791 S.W.2d 84 (Tex. Crim. App.1990); *Morrow v. State*, 753 S.W.2d 372 (Tex. Crim. App.1988). Capital murder is defined in terms of one's intent to produce a specified result. Not only must the accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that death result from that conduct; the mere intent to pull the trigger of a firearm will not satisfy the statute. *Kinnamon*, 791 S.W.2d at 88-89.

Appellant argues there is insufficient evidence to even prove he possessed the intent to kill Officer Harper. Appellant testified at trial. Appellant said he had never shot a shotgun before. He saw the police officer pull up and that's when he walked towards the policeman and he had gotten out and called me over. Appellant told him not to come too much closer because he had experiences with police before. Harper asked him what he was doing, and Appellant told him picking up rocks and looking

10

at a construction site. Harper said that the man was allowed to have the pictures and that he was going to search his person and then immediately started putting his hands in my pockets. When he had put his hand in my pocket, Appellant told him that he was illegally searching me. Appellant raised his left hand and told him that he was illegally searching me. Harper went to go put his hand in my pockets again. Harper became physical and tried to apprehend Appellant. What did he do with your left arm? He twisted it behind my back. Harper grabbed him around the throat and went to take Appellant to the ground. Harper put his arm around Appellant's throat, and he had left go of my left arm to tighten his other hand. When Harper grabbed Appellant around the throat, he was not able to breathe. Did you honestly think that your life was in jeopardy? I believe so. Appellant pulled out a pistol and put it behind my head with my right hand. Appellant pulled the trigger once I felt it pressed where I assumed his shoulder would be. Were was there any intention in your at all about killing the officer? No, sir. I was panicking. Did you -- and do you honestly believe that you shot him in self-defense? Yes, sir. (6 RR at 8-35). Cross examination, Harper grabbed the gun and it went off, or did you shoot him? I pulled the trigger. Appellant did not know he was shot in his stomach until later. When he had his hand in my pocket, I had put my hand up so that he couldn't continue to put his hand in my pocket. He had maneuvered himself behind me at that point. After he had started

twisting my arm I had tried to turn towards him. I was hoping I would get a self-defense sooner than it's been. (6 RR at 35-87). The jury was charged on the issue of self defense. (1 CR at 144-151). Harper was choking Appellant he could not breathe and used self defense to break Officer harper's strangle hold from Appellant's neck. Simply no intent to kill Officer Harper.

Harper basically confirmed the self defense theory and did not dispute much of Appellant's testimony. Harper said, Appellant told him initially that he was picking up rocks, that he liked to collect rocks and look at rocks. He asked him for some type of identification. He told Harper he didn't have an ID card or a driver's license, but he gave Harper his name and date of birth. At that point, he tried to walk away again; and the alarm went off on my radio to advise me that he had an active arrest warrant. So, Harper told him at that point, you've got a warrant for your arrest. I'm going to detain you until we find out what the warrant is for and if they can actually confirm the warrant. He told him he was going to place him in handcuffs and do a pat-down search of his person. He went to take hold of him and place him in handcuffs. And he stated to me, you're not fucking touching me, and turned and walked away. So, Harper grabbed him by the back of his shirt again or his jacket again and attempted to place him in handcuffs; and began a physical confrontation. He took hold of his left wrist and went to remove my handcuffs with my right hand from my handcuff case,

12

so he could detain him in handcuffs. He probably would have done something like this and just do like that and took him to the ground. Just a leg sweep. During the struggle, he was able to gain his footing and stand back up, partially back up, in attempting to flee again. So, he still have a hold of him. So, he pulled him back; and we both fall backwards. he was laying on his back and he's laying on top of me with his back on top of my chest. Harper claimed he was still trying to get him to calm down and quit fighting me. At some point, he somewhere in his waistband area. And he pulled out a pistol and reached it over his right shoulder and put it in my face. When he saw the weapon, he pushed away basically pushed him off of me. At which point, we both immediately jumped up as fast as we could; and when we both stood up, we were literally face to face, within a foot of each other. When we stood up, he did see the weapon in his hand. He saw him point it out towards me. At which time, he grabbed a hold of the muzzle, the end of the pistol, to try to keep him from pointing it in my direction. Did you feel it go off? I did. Did you still have a hold of it when it went off? I did. I stumbled back a couple of feet, and he turned away from me as if he was going to run. I stumbled back. He turned as if he was going to take off running, and then he turned back and pointed it back in my direction. (4 RR at 121-178). Cross examination, initially upon his arrive at that point all he had nothing but a guy walking down the street, which is perfectly legal, when he told him he was

13

going to pat him down, that's when he stated: You're not fucking touching me. So, Harper grabbed him by the back of the collar. When he grabbed hold of him and pulled him back towards me, because, like he stated, it wasn't a forceful jerk. He was just trying to walk off, and he was trying to keep him from walking off. Harper was choking him. Trying to gain control of him. Harper claimed that he wouldn't say choking. He was trying to gain control of him. Would that be perceived as being choked by the person whose got an arm around their neck? It could be. He couldn't see. The only thing he saw was the barrel, muzzle end of the gun. When he saw the gun, he pushed him to my right, basically threw him up off of me to get away from the gun. Once we were both on our feet and he pointed it at me is when he grabbed it. When you grabbed the gun, you grabbed the barrel of the gun. When you grabbed the slide like that, is the gun able to activate. To my recollection, only after he shot me when he stumbled backwards. When he was shot and stumbled backwards basically what happened, he stumbled backwards. He turned his back to me as if he was going to run and then spun back around and pointed the gun at me again. At which time, he dove towards him and grabbed for the gun. (4 RR at 178-219).

The focus of this case is on Appellant's intent, on the result of the defendant's action and his culpable mental state, not on the precise act or the nature of the conduct committed by the defendant. *Johnson*, 364 S.W.3d at 298; *Brooks*, 967

14

S.W.2d at 950. The only conclusion based upon this evidence and review of the record that there is insufficient evidence from which the trier of fact could have determined beyond a reasonable doubt that Appellant did then and there with the specific intent to commit the offense of Capital Murder, did then and there attempt to intentionally or knowingly cause the death of an individual, namely, Brian Harper, and the said Brian Harper was then and there a peace officer who was acting in the lawful discharge of an official duty, and the defendant knew Brian Harper was a peace officer, by shooting Brian Harper with a firearm, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended; or that Appellant did then and there with the specific intent to commit the offense of Capital Murder, did then and there attempt to intentionally or knowingly cause the death of an individual, namely, Brian Harper, and the said Brian Harper was then and there a peace officer who was acting in the lawful discharge of an official duty, and the defendant knew Brian Harper was a peace officer, by shooting at Brian Harper with a firearm, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended. Applying, *Brooks v. State,* 323 S.W.3d 893,894-95 (Tex. Crim. App. 2010) (plurality op.); *id.* at *926* (Cochran, J., concurring). *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781. *Burden v. State*, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). The conviction

18

should be reversed and this Court should render a judgment of acquittal. The only conclusion that can be reached is that the said conviction should be reversed and this Court should render a judgment of acquittal. This Court should grant a Rehearing.

IV.

Appellant files this his Motion For Rehearing due to the fact that this Court, after having rejected the idea of Oral Argument in this attempted capital murder appeal, has wholly rejected all of Appellant's arguments, and refused to address all of the merits of Appellant's appeal; and has misconstrued Appellant's argument that could effect the analysis of this Court's Opinion. Appellant argued in the instant case, and appealed his conviction.

Appellant is in dispute with this Court's opinion issued and requests that this Court consider this Motion For Rehearing. Appellant's contention is that the arguments in this Court's Opinion are an inaccurate interpretation and arguably unclear interpretation of Appellant's arguments that should merit a Rehearing.

V.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Appellant, Brian Thomas Spinks, prays that this Court grant his motion for rehearing and set it for submission at the earliest possible date; that upon submission and review of the appellate record and

the briefs and argument of counsel, the Court find reversible error in the judgment of the trial court and issue its opinion and judgment reversing the judgment of the trial court; and remand the matter to the trial court for a new trial, assessing all costs of the appeal against appellee, and order execution of the judgment of this Court in accordance with its opinion.

Respectfully submitted,

**/s/CARY M. FADEN**
**Cary M. Faden**
SBN 06768725
54 Sugar Creek Center Blvd., Suite 200
Sugar Land, Texas 77478
Telephone:(281) 491-6182
Facsimile:(281) 491-0049
**E-Mail: caryfaden@aol.com**

Attorney For Appellant

20

## CERTIFICATE OF COMPLIANCE, T.R.A.P., RULE 9.4(3)

In accordance with TEX. R. APP. P. 9.4(3), I Cary M. Faden, certify that this is a computer generated document and I state that the number of words in this document is approximately 4,278 words. I am relying on the word count of the computer program used to prepare this document.

/s/CARY M. FADEN
Cary M. Faden

## CERTIFICATE OF SERVICE

In accordance with TEX. R. APP. P. 9.5, I, Cary M. Faden, certify that a true and correct copy of the foregoing motion for rehearing has been served, by hand delivery, and/or by U.S. Mail, and/or by facsimile transmittal, to Brian Thomas Spinks; to the attorney for the State Of Texas, Jeri Yenne, District Attorney, 111 E. Locust Street, Room 408A, Angleton, Texas 77515 on this 25th day of May, 2018.

/s/CARY M. FADEN
Cary M. Faden