Harvey EARVIN, Petitioner–Appellant,

v.

James A. LYNAUGH, Director of the
Texas Department of Corrections,
Respondent–Appellee.

No. 87–6041.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1988.

Will Gray, Houston, Tex., for petitioner-appellant.

Charles A. Palmer, Robert S. Walt, Asst.
Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge,
WILLIAMS and HIGGINBOTHAM,
Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

A jury convicted Harvey Earvin of capital murder on August 25, 1977, and sentenced him to death. After exhausting his appeals in the state court, he petitioned the United States District Court for the Eastern District of Texas for a writ of habeas corpus which was denied on September 3, 1987. He then appealed to this Court. On appeal, he claims that he was denied effective assistance of counsel during the punishment stage of his trial. Upon a review of the record and applicable law, we affirm the district court's denial of the writ of habeas corpus.

## I. *Facts and Prior Proceedings*

The body of Ertis Brock was discovered on the evening of December 7, 1976. He had been shot once in the chest with a shotgun. Within days, Earvin, along with two others, was arrested in connection with the murder. Earvin subsequently made a written confession, stating that he shot Brock while attempting to rob him.

Earvin was tried before a jury and convicted of murder on August 24, 1977. He was then sentenced to death on August 25, 1977. His conviction and sentence were affirmed by the Texas Court of Criminal Appeals on January 10, 1979, and certiorari was denied by the United States Supreme Court on October 15, 1979. *Earvin v. State*, 582 S.W.2d 794 (Tex.Crim.App.1979) (en banc), *cert. denied*, 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979).

After learning of his execution date of May 14, 1986, Earvin filed two separate applications for writ of habeas corpus and motions for stay of execution, which were both denied by the Texas Court of Criminal Appeals.

Earvin then filed a writ pursuant to 28 U.S.C. § 2254 and a request for stay of execution in the federal district court. The stay was granted and an evidentiary hearing was held. Earvin claimed, among other things, that he was denied effective assistance of counsel throughout his trial. The district judge ruled against Earvin, finding no constitutional ground meriting relief. Earvin then appealed to this Court.

Earvin has narrowed his appeal. He now claims that his counsel was ineffective only at the penalty stage of his trial. He bases his claim on the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. He also raises for the first time the claim that the Texas procedure imposing the death penalty is unconstitutional on its face.

We affirm the district court. Earvin has not established that his counsel was ineffective nor that he was prejudiced by his counsel's actions. Further, he is precluded from bringing up the constitutionality of the Texas statute because he has not properly preserved error.

## II. *Claim of Ineffective Assistance of Counsel*

Earvin seeks to have his sentence set aside based on a claim of ineffective assistance of counsel at the penalty stage of his trial. He alleged three main errors on the part of his counsel: (1) his counsel failed to guide the jury in relating the mitigating evidence presented to the three special issues that the jury had to decide affirmatively for Earvin to receive the death penalty;[1] (2) his counsel, in his closing argument, failed to disagree with the prosecutor that special issues one and three should be affirmatively answered by the jury; and (3) his counsel failed to object to either the trial court's definition of "deliberate" in the penalty charge or the prosecution's argument on this issue. He claims that because

---

1. To receive the death sentence in Texas, the jury must answer three special issues affirmatively:

    1. Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

2. Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

3. If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex.Code Crim.Proc. art. 37.071(b).

of these mistakes his counsel was ineffective.

## A. *Standard to be Applied*

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court enunciated the standard to be applied when reviewing a claim of ineffective assistance of counsel. There the Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 686, 104 S.Ct. at 2064.

## B. *Deficiency of Counsel*

■ To prove counsel was deficient, the defendant must prove that counsel's representation fell below an objective prevailing professional standard of reasonableness. *Id.* at 690, 104 S.Ct. at 2065. This assessment is determined by looking to the situation as seen by counsel at the time of the trial. Because of the difficulties of this inquiry, the Supreme Court directs us to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citations omitted); *see also Knighton v. Maggio*, 740 F.2d 1344, 1350 (5th Cir.), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984).

This record discloses that the challenged action of Earvin's counsel can be reasonably part of a sound trial strategy. Thus, Earvin's claim must fail. Earvin's counsel's strategy was to admit to the murder and focus instead on gaining the sympathy of the jury to grant Earvin a life sentence instead of the death penalty. Counsel attempted to carry out his strategy through the use of mitigating evidence. At the punishment phase of the trial, Earvin's attorney presented the following witnesses: Earvin, Earvin's mother, his stepfather, a preacher, one of the jailers in charge of Earvin, and two county prisoners who shared Earvin's cell. Through the use of the witnesses' testimony, the attorney attempted to develop the following mitigating factors: the youth of Earvin, his lack of a criminal record, his fear at the time of the murder, and his lack of specific intent to murder.

■ Earvin first argues that the jury did not properly consider this mitigating evidence because of lack of guidance by his counsel. The Supreme Court has contemplated that a jury will be "given guidance regarding the factors about the crime and the defendant that the state, representing society, deems particularly relevant to the sentencing decision...." *Gregg v. Georgia*, 428 U.S. 153, 191, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976). The Court, however, has held that the Texas statute's use of the three special issues gives enough guidance to the jury in their application of mitigating factors. *Franklin v. Lynaugh*, — U.S. —, —, 108 S.Ct. 2320, 2332, 101 L.Ed.2d 155 (1988) (plurality opinion); *Jurek v. Texas*, 428 U.S. 262, 275, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929 (1976). It follows then that since Earvin concedes that his attorney, combined with the prosecution's presentation of witnesses, brought out all the relevant mitigating evidence, the jury was properly guided through the three special issues to use all the relevant evidence in reaching its decision.

■ Earvin next claims his counsel unreasonably ignored to the point of effective

waiver special issues one and three. His attorney made the conscious strategy decision, however, to focus on special issue two. This was a reasonable professional choice under the circumstances. It was the issue with the best chance for success, and only one negatively answered issue is needed for the defendant's life to be spared.

As to issue one, the issue on the deliberateness of the defendant's actions, the jurors heard overwhelming evidence of deliberate conduct, including Earvin's own testimony at the punishment phase. Earvin testified that the robbery had been planned for at least two days, that he had gone to the scene armed and disguised, and that he had fired the fatal shot. There was clearly enough evidence for the jury to conclude that when Earvin deliberately shot Brock, he could reasonably expect that Brock's death would result. *See, e.g., Granviel v. State*, 552 S.W.2d 107, 122–23 (Tex.Crim. App.1977), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). It was not unreasonable then for counsel in effect to concede this issue.

As to issue three, the issue on provocation, there was also strong evidence in the record that it was reasonable for counsel to discount the issue. The facts were disputed. Earvin claims he only shot his gun after the decedent reached into his pocket. The prosecution put on evidence that no gun was found on Brock. The jury was free to disbelieve Earvin's statement that his victim had a gun that he would have used on Earvin if Earvin had not used his gun first.

The law on this issue is strongly against Earvin since a robber has no right to self defense. *Smith v. State*, 676 S.W.2d 379 (Tex.Crim.App.1984), *cert. denied*, 471 U.S.

1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (the jury was held to have acted within its proper role in making an affirmative finding on issue three even though the decedent had a gun and used it). Thus, both the law and the facts pointed to answering this issue affirmatively.

As to issue two, the future dangerousness of the defendant, Earvin's counsel undertook to establish that Earvin no longer posed a threat to society. Counsel's strategy was reasonable. In *Jurek*, the Supreme Court approved of the trial counsel's use of the following mitigating evidence in an attempt to receive a negative answer from the jury on issue two:

> "In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and severity of his prior criminal conduct. It could further look at the age of the defendant and whether or not at the time of commission of the offense he was acting under duress or under the domination of another.... 552 S.W.2d, at 93–94."

428 U.S. at 275, 96 S.Ct. at 2957. Earvin's counsel thus had direct support from the Supreme Court when he chose to focus on special issue number two in attempting to get Earvin a life sentence. The mitigating evidence presented was properly considered under issue two, including Earvin's lack of a prior criminal record, his age, and his alleged fear at the time of the murder. The jury however had enough evidence before it when it determined issue two negatively.[2]

■ Finally, Earvin argues that counsel's failure to object to the punishment

---

**2.** The prosecution put on several witnesses that testified to a lack of remorse after the crime by Earvin, another factor the Supreme Court found appropriately considered under special issue two in *Jurek*. There was also evidence that Earvin continued to be a trouble-maker while in pre-trial custody. For example, there was evidence that he set fire to another prisoner's leg as a prank with other prisoners and then later laughed about it, that he was the boss of his cell block, and that he laughed when told he would receive the death sentence.

Also, the prosecution successfully cross-examined the defense witnesses. Earvin's counsel attempted to use Earvin's mother as a witness, but she was unable to complete her testimony because of emotional distress. Also, he used a preacher, but cross-examination effectively brought out that the preacher did not know Earvin well. Finally, Earvin's supervisor testified that he liked Earvin, but on cross-examination, was unable to state that Earvin was no longer dangerous to society.

charge was improper. He claims that the definition of "deliberate" in the charge coupled with the court's definition of "intent" and the prosecution's misstatement of the law made intentional and deliberate conduct synonymous.[3] Since his counsel failed to object then, Earvin argues he failed to achieve the constitutional level of competence.

It is clear that something more than intentional conduct must be found at the punishment phase of the trial on the issue of "deliberateness." *See, e.g., Marquez v. State,* 725 S.W.2d 217, 244 (Tex.Crim.App. 1987); *Fearance v. State,* 620 S.W.2d 577, 584 (Tex.Crim.App.1981). The definitions of "deliberate" and "intent" used by the trial court, however, were defined differently and in a way not at odds with definitions provided by the Court of Criminal Appeals. *See Thompson v. State,* 691 S.W. 2d 627, 632–33 (Tex.Crim.App.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed. 2d 153 (1984).

As to counsel's failure to object to the prosecution's alleged improper argument, Earvin had to show "either persistent and pronounced misconduct or that the evidence was so insubstantial that but for the remarks, no conviction would have occurred." *Fulford v. Maggio,* 692 F.2d 354, 359 (5th Cir.1982), rev'd on other grounds, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *see also Willie v. Maggio,* 737 F.2d 1372, 1390 (5th Cir.), *cert. denied,* 469 U.S. 1002, 105 S.Ct. 415, 83 L.Ed.2d 342 (1984). As we found earlier, the jury clearly had enough evidence to find deliberateness on the part of Earvin so the prosecution's remarks were not prejudicial.

### C. *Prejudice to Earvin*

■ Even if Earvin had satisfied the first prong of the *Strickland* test, he still must fail on appeal since he fails affirmatively to prove prejudice from the alleged errors. Both prongs must be satisfied in order to be entitled to relief; thus, since Earvin fails on the first point, there is no need to consider the second prong of the *Strickland* test. *See Willie,* 737 F.2d at 1392 (proof of one without the other is not enough).

We simply make this brief observation: As to the alleged errors of his counsel, Earvin falls far short of showing that the outcome would have been different even if error by his counsel occurred. He has not shown that if his counsel had objected to the charge and the prosecutor's arguments on the charge or if he had argued differently on the special issues or if he had tied the evidence more closely to the special issues that the outcome would have been different. Finally, Earvin failed to demonstrate a fundamental unfairness to the proceeding, the underlying theme of the two-prong *Strickland* approach. 466 U.S. at 697, 104 S.Ct. at 2069.

### III. *Constitutionality of the Texas Statute*

■ Earvin raises for the first time in his series of petitions and appeals that the Texas statute on its face is unconstitutional, relying on this Court's opinion in *Penry v. Lynaugh,* 832 F.2d 915 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). Earvin argues that

---

**3.** In paragraph two of the charge, the trial court gave the following instruction:

By the term "deliberate", as used in the special issue, is meant with careful consideration or deliberation; with full intent; not hastily or carelessly—as a deliberately formed purpose; with awareness of the consequences."

"A person acts with intent with respect to the nature of his conduct, or to the result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result."

Earlier at the guilt stage of the trial, the trial court had given the jury the following definition of "intentionally" and "intent":

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

The prosecutor in his final penalty argument said:

I think in deliberating yesterday ... as to whether or not this was murder or capital murder, I think by finding it was capital murder.... This [first] issue was obviously answered. I think it was answered whenever you looked over intentional as to his conduct."

**628**

the statute does not allow the jury to consider all the mitigating evidence because of the use of the special issues. This claim is not properly before this Court and thus should not be considered for the first time on appeal. *Hall v. Maggio,* 697 F.2d 641, 642–43 (5th Cir.1983).

Even if the claim were properly before us, the Supreme Court has continued favorably to view the use of the "special issues" by the Texas courts. *Franklin,* 108 S.Ct. at 2331–32. The words of Justice O'Connor's concurrence in *Franklin* are apt for Earvin's case today:

> [O]n the facts of this case, the Texas capital sentencing procedure did not prevent the sentencing jury from giving mitigating effect to any evidence relevant to petitioner's character or background or to the circumstances of the offense.

### IV. *Conclusion*

We affirm the district court's decision denying Earvin habeas corpus relief. Earvin failed to prove his counsel was so deficient that he was denied effective assistance of counsel at the penalty stage of his trial. Further, he failed to prove any prejudice from the actions of his counsel justifying relief from this Court.

AFFIRMED.