# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40332
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2016

Lyle W. Cayce
Clerk

United States of America, ex rel., ROLAND WADE JACKSON,

Plaintiff - Appellant

v.

UNIVERSITY OF NORTH TEXAS; TEXAS GUARANTEED STUDENT
LOAN CORPORATION; JP MORGAN CHASE BANK, N.A.; NELNET,
INCORPORATED; SLM CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-734

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Plaintiff-Appellant Roland Wade Jackson ("Jackson") alleged that
University of North Texas ("UNT"); Texas Guaranteed Student Loan Co.
("TGSL"); JP Morgan Chase Bank, N.A. ("Chase"); Nelnet, Inc. ("Nelnet"); and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-40332

SLM Co. ("SLM") (collectively "Defendants-Appellees") violated the False Claims Act ("FCA") and, alternatively, various Texas state laws in processing his student loans and subsequently garnishing his wages after he defaulted on his loan repayment plan. The U.S. District Court for the Eastern District of Texas dismissed the claims for, *inter alia*, being time-barred. We AFFIRM.

## I.     BACKGROUND & PROCEDURAL HISTORY

Jackson attended UNT from 1992–96 on an athletic scholarship. While attending UNT, Jackson applied for several student loans. The loans at issue in this case are those for which Jackson applied during the 1994–95 and 1995–96 terms. Jackson claims that UNT failed to factor in his athletic scholarship in calculating his cost of attendance ("COA"), causing the loan amount UNT certified to Chase on Jackson's behalf to be much higher than the amount for which he should have qualified. Chase then approved the loan, and TGSL, as the guarantee, certified the loan amount under an agreement with the U.S. Department of Education ("DOE"). Chase allegedly "falsely certified" the erroneous award UNT submitted without conducting any independent investigation into the document's accuracy and sent the funding to UNT, which was then supposed to obtain Jackson's signature and disburse the award. Jackson contends, however, that UNT realized its mistake in not including the amount of his athletic scholarship and refused to relinquish the funds to Jackson as it "did not want to violate NCAA Rules by physically disbursing Chase's unsubsidized loan." This alleged mishandling happened with both loans at issue in this case.

Jackson graduated in May 1996, triggering his loan repayment obligations. Nelnet, as the original loan servicer, began servicing the loans until on or about June 1, 2000, whereupon SLM became the loan servicer. After Jackson eventually defaulted on the loans, Chase and SLM, on July 26, 2005, "caused the default claim to be submitted" to TGSL, which accepted the

No. 16-40332

claim "without verifying the loans were eligible under the guarantee and in violation of the pertinent regulations."   TGSL subsequently garnished Jackson's wages to repay the loan obligation to the DOE.   Through this garnishment, Jackson has paid his loan obligations in full.

Jackson, as a relator, filed the instant *qui tam* action under seal on December 11, 2013.  The United States declined to intervene, and the district court thereafter ordered the complaint unsealed and served upon Defendants-Appellees.  In his complaint, Jackson alleges that UNT's failure to include his athletic scholarship, Chase and SLM's submission of the guarantee, and TGSL's claim to the DOE violated the FCA.  Specifically, (1) had UNT's cost of attendance calculation accounted for his athletic scholarship, Jackson would not have been eligible for the loans, and (2) even if he were eligible for the loans, UNT never disbursed them.  Under either theory, Jackson contends, Defendants-Appellees submitted a false claim for payment to the Government.  Alternatively, Jackson avers that Defendants-Appellees' actions violate Texas's conspiracy and unjust enrichment laws.  The district court found, *inter alia*, that Jackson's claims were time-barred and dismissed the case.

## II.   DISCUSSION

Jackson brings federal FCA and state law conspiracy and unjust enrichment claims against Defendants-Appellees.  Jackson further argues that the district court abused its discretion when it denied his motion to amend his complaint.  We discuss each claim in turn.

### A.

The FCA prohibits persons and entities from submitting false or fraudulent claims to the federal government.  31 U.S.C. § 3729.  Typically, the government enforces the Act; however, under the FCA's *qui tam* provision, an individual may sue on the government's behalf to recover false claims for payment. *Id.* § 3730(b)(1); *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 284–

No. 16-40332

85 (5th Cir. 2012). In this case, Jackson alleges Defendants-Appellees violated the FCA when, on July 26, 2005, claims for Jackson's defaulted loans were submitted. Because the district court dismissed the case as time-barred, we review its judgment de novo. *Clymore v. United States*, 217 F.3d 370, 373 (5th Cir. 2000).

The statute of limitations begins to run on an FCA claim on the date upon which the offender submits a false claim for payment, regardless of the date of payment. *Smith v. United States*, 287 F.2d 299, 304 (5th Cir. 1961). The FCA's statute of limitations provision dictates an FCA lawsuit cannot be brought

(1) more than 6 years after the date on which the violation of [the FCA] is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b).

Jackson contends that he is entitled to the ten-year statute of limitations period because "[i]t was not until 2011 until [he] received documents from the Appellees that demonstrated that a false claim had been submitted." He further argues that as a relator, he is entitled to take advantage of § 3731(b)(2) as though he were an "official of the United States charged with responsibility to act in the circumstances." In this circuit, however, *qui tam* FCA actions are governed by the limitations period found in § 3731(b)(1) when the government declines to intervene, as it did here. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 293 (5th Cir. 1999) ("Qui tam plaintiffs cannot qualify as surrogates of 'responsible federal officers' who have the right to represent the sovereign

4

No. 16-40332

and sue the respective states."); *United States ex rel. Erskine v. Baker*, 213 F.3d 638 (5th Cir. 2000) (per curiam) ("[Section] 3731(b)(2) is only available to relators if they are in direct identity with the government."); *Foster*, 587 F. Supp. 2d 805, 816 (E.D. Tex. 2008) ("This Court has thoroughly considered the text of the statute, the legislative history, and the case law cited above.  Having done so, the Court is of the opinion that actions brought by a *qui tam* relator are governed by the limitations period in § 3731(b)(1).").

Therefore, the statute of limitations on Jackson's claim bars any suit filed after July 26, 2011, six years after the date Defendants-Appellees allegedly submitted a false claim for payment.  Because the United States declined to intervene and Jackson did not bring his claim until December 11, 2013, two years after the statute of limitations found in § 3731(b)(1) had run, his FCA claims are time-barred.

**B.**

Jackson alternatively asserts that Defendants-Appellees violated Texas state law for conspiracy to convert Jackson's property and unjust enrichment. Having dismissed his FCA claims, the district court exercised its discretion to retain supplemental jurisdiction over these state law claims.[1]  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *Id.*  Here, the court below "decided that those interests would be best served by exercising jurisdiction over [Jackson's] state law claims."  *Id.* (citations omitted).  *But see*

---

[1] That is, the district court retained jurisdiction over Jackson's state law claims against each Defendant-Appellee *except* UNT.  The district court dealt with each Defendant-Appellees' motion to dismiss separately.  Unlike the other Defendants-Appellees, the district court declined to exercise supplemental jurisdiction over Jackson's state law claims against UNT, dismissing them for lack of jurisdiction.

No. 16-40332

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 2007) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). Having retained jurisdiction, the district court found that each of Jackson's state law claims were time-barred. Again, we review the district court's holding de novo. *Clymore*, 217 F.3d at 373.

In Texas, the statutes of limitations for conspiracy, conversion, and unjust enrichment are two years. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (citation omitted) (stating unjust enrichment statute of limitations is two years); *In re Estate of Melchior*, 365 S.W.3d 794, 798 (Tex. App.—San Antonio 2012, pet. denied) ("The limitations period for conversion is two years, and [it] begins to run at the time of the unlawful taking."); *Connell v. Connell,* 889 S.W.2d 534, 540 (Tex. App.—San Antonio 1994, writ denied) (stating that the statute of limitations on a civil conspiracy claim is two years). The latest year in which Jackson alleges wrongdoing on the part of any Defendant-Appellee is 2005, and, therefore, the relevant statutes of limitations ran in 2007. Accordingly, Jackson's state law claims, like his FCA claims, are time-barred.[2]

Having concluded that the applicable statutes of limitations prohibit Jackson's federal and state law claims, we find that the district court did not

---

[2] On appeal, Jackson asserts that Defendants-Appellees' actions also constitute fraud and that, therefore, he is entitled to a four-year statute of limitations. As Jackson alleges Defendants-Appellees committed fraud for the first time on appeal, we need not consider it. *United States v. Cates,* 952 F.2d 149, 152 (5th Cir. 1992) ("We will not consider for the first time on appeal an argument not presented to the district court." (citing *Earvin v. Lynaugh,* 860 F.2d 623, 627–28 (5th Cir. 1988))). Even if he were entitled to a four-year statute of limitations, his claim would still be time-barred. Further, Jackson's assertion that he is entitled to the benefit of the "discovery rule," is unavailing; as Jackson notes, even though he never received the loans, his wages were garnished to repay them beginning on February 16, 2007. Thus, even assuming *arguendo* the discovery rule would toll the statute in his favor, at a minimum, Jackson should have known he was being charged for loans he never received in 2007, and the statute of limitations would have run *years* before he brought the instant matter. *See Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006) (noting that the discovery rule tolls a statute of limitations "until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action").

abuse its discretion in denying Jackson's motion to amend and do not address his remaining assertions of error.  *See DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam) ("The liberal amendment rules . . . do not require that courts indulge in futile gestures.  Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

## III.    CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.