# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 10, 2025

Lyle W. Cayce
Clerk

_____

No. 23-30807
_____

Kenneth Lavigne,

*Petitioner—Appellant*,

*versus*

Tim Hooper, *Warden, Louisiana State Penitentiary*,

*Respondent—Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-894

_____

Before Clement, Graves, and Willett, *Circuit Judges*.

ON PETITION FOR REHEARING

Per Curiam:[*]

The petition for panel rehearing is GRANTED. We withdraw our previous opinion, reported at 2025 WL 522580, and substitute the following:

A habeas petitioner seeks post-conviction relief, claiming that his trial counsel was ineffective for failing to advise him that the kidnapping charge he pled guilty to was time barred and that the district court erred by denying

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

his motion for an evidentiary hearing, which led him to enter the plea deal with the State. We conclude that while trial counsel was deficient, that deficiency did not cause any prejudice, foreclosing an ineffective-assistance-of-counsel claim. We also conclude that the district court erred in denying an evidentiary hearing because there is a factual dispute that if resolved in petitioner's favor would entitle him to relief. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

In 1990, Kenneth Lavigne abducted, raped, and stabbed his aunt to death. Decades later, investigators matched his DNA to the DNA recovered from her clothing and rape kit. The Ascension Parish Sheriff arrested Lavigne for first degree murder and aggravated rape in March 2013. On October 11, 2013, a grand jury indicted Lavigne for second-degree murder; he pled not guilty.

On January 8, 2016, the District Attorney amended the charges and filed a new bill of information, accusing Lavigne of manslaughter and second-degree kidnapping. The same day, the trial court arraigned Lavigne on the new charges. As part of a plea bargain agreement, Lavigne pled guilty to the amended charges, and the District Attorney dismissed the second-degree murder charge. Also as agreed in the plea deal, the trial court sentenced him to twenty-one years at hard labor on the manslaughter charge but deferred sentencing him on the kidnapping charge until it had a presentence investigation report (PSR).

Months later, after the PSR was complete, the court set the kidnapping matter for sentencing on April 18, 2016. Lavigne's counsel started the sentencing hearing by informing the court that Lavigne wanted to withdraw his plea on the kidnapping charge because he believed the

sentences would run concurrently but the PSR recommended that they run consecutively. The State objected that Lavigne had knowingly and intelligently pled guilty and could not withdraw his plea because he did not like the PSR's recommendation. The trial court denied Lavigne's motion and sentenced him to forty years at hard labor on the kidnapping charge, to be served consecutively to the twenty-one-year sentence at hard labor on the manslaughter charge.

Lavigne challenged the kidnapping sentence, but the state appellate court affirmed the conviction. The Louisiana Supreme Court denied certiorari.

While in prison, Lavigne, acting pro se, moved to quash the kidnapping charge as untimely because the State failed to bring the charge within the six-year prescriptive period. The trial court denied the motion, referencing the guilty plea and sentence. Neither the state appellate court nor supreme court reviewed the denial.

Lavigne then filed a pro se application for post-conviction relief in state court, claiming, *inter alia*, that his guilty plea to the kidnapping charge was unknowing and involuntary because his trial counsel was ineffective. The trial court ruled that Lavigne failed to state a claim of ineffectiveness. The state appellate court denied review. And the state supreme court denied certiorari, finding that Lavigne failed to show that he received ineffective assistance of counsel.

Having fully litigated his application for post-conviction relief in state court, Lavigne brought his claim for ineffective assistance of counsel in federal court, where he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After de novo review, a magistrate judge recommended dismissal of Lavigne's claims because he failed to demonstrate ineffectiveness of either trial or appellate counsel. Lavigne objected, but after

de novo review the district court denied the objection, adopted the magistrate judge's recommendation, determined that an evidentiary hearing was not required, and denied Lavigne's petition for a writ of habeas corpus.

Lavigne sought a certificate of appealability from this court, which we granted in part. Presently before us are two issues: (1) whether Lavigne's trial counsel was ineffective for failing to advise him that the kidnapping charge was time barred and that he would waive the time bar defense by pleading guilty; and (2) whether the district court erred by denying an evidentiary hearing to unearth the discussions leading to Lavigne's acceptance of a plea deal.

## STANDARD OF REVIEW

When a claim was adjudicated on the merits in state court, federal courts only grant an application for a writ of habeas corpus on behalf of a person in custody if the state-court adjudication either resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d); *accord Howes v. Fields*, 565 U.S. 499, 505 (2012).

In making this determination, "we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Jenkins v. Hall*, 910 F.3d 828, 832 (5th Cir. 2018) (quoting *Lewis v. Thaler*, 701 F.3d 783, 787 (5th Cir. 2012)).

No. 23-30807

## DISCUSSION

I.    *Whether Lavigne's trial counsel was ineffective*

A.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a test for establishing a viable ineffective-assistance-of-counsel claim. Under *Strickland*, a defendant must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687.

"In *Hill*, the Court held 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). The Court further explained that:

> In *Hill*, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."

*Id.* at 163 (modification in original) (quoting *Hill*, 474 U.S. at 59).

Lavigne argues his trial counsel was deficient during plea negotiations by failing to advise him that the charge he was pleading to was time-barred. Had he been so advised, Lavigne says, he would have gone to trial.

B.

As the state trial court adjudicated the merits of the ineffective-assistance-of-counsel claim, we will only grant Lavigne's petition for habeas corpus if the state court's analysis

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

5

No. 23-30807

determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Relevant here, if a state court fails to "apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law." *Lafler*, 566 U.S. at 173.

We conclude that insofar as the state court applied the *Strickland* standard, it did so improperly and contrary to clearly established federal law.

In assessing Lavigne's claim that his trial counsel was deficient, the state trial court reasoned: "Counsel benefitted Mr. Lavigne in this negotiation by eliminating the mandatory life sentence. Mr. Lavigne well knew the range of penalties the Court could impose and that it was in the Court's discretion whether to run his sentences concurrently or consecutively."

This analysis does not address whether Lavigne's counsel was deficient. It also does not address whether Lavigne suffered prejudice. In the plea context, a court must determine whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 566 U.S. at 163 (modification in original) (quoting *Hill*, 474 U.S. at 59). The state court's conclusion that Lavigne's counsel benefitted him fails to address the core question of the inquiry: whether Lavigne still would have pleaded guilty. As the state court did not apply *Strickland* to assess Mr. Lavigne's claims, its "adjudication was contrary to clearly established federal law." *Lafler*, 566 U.S. at 173.

No. 23-30807

## C.

Once a federal court "concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred." *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 849 (3rd Cir.), *as amended* (July 18, 2017) (citing *Lafler*, 566 U.S. at 174); *accord Grace v. Hooper*, 123 F.4th 800, 804 (5th Cir. 2024).

Lavigne's ineffective-assistance-of-counsel claim turns on whether his counsel's performance was outside the range of professional competence because they failed to advise him that the prosecution improperly brought a second-degree kidnapping charge against him. He offers two theories as to why the charge was improper under Article 576 of the Louisiana Code of Criminal Procedure: (1) it was time-barred because it was used to avoid Article 578's statute of limitations on the second-degree murder charge; and (2) the second-degree kidnapping charge was not a lesser offense based on the same facts as the second-degree murder charge.

### 1.

Article 576 commands that "[a] new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578." La. Code Crim. Proc. art. 576.

Lavigne alleges that the State instituted his manslaughter and second-degree kidnapping charges to avoid Article 578's limitation that "no trial shall be commenced" in non-capital felony cases "after two years from the date of the institution of prosecution." La. Code Crim. Proc. art. 578(A)(2).

7

However, a review of the record shows that the State did not bring these charges to avoid Article 578's time limit. The relevant timeline is as follows:

- October 11, 2013: A grand jury returns a true bill of second-degree murder. This institutes the prosecution, and the prescriptive period begins to run.
- December 9, 2013: After the statute of limitations has run for 59 days, Lavigne moves for discovery, disclosure, inspection, and a bill of particulars. Each of these motions is a "preliminary plea," so the "running of the period of limitation . . . shall be suspended until the ruling of the court thereon." LA. CODE CRIM. PROC. art. 580A.
- March 15, 2015: After multiple continuances, the trial court ruled on the motions and ordered them "satisfied." With this ruling, Article 578's period of limitation is no longer suspended and begins to run again.
- January 8, 2016: After the statute of limitations has run for an additional 298 days, for a total of 357, the State stopped prosecuting the second-degree murder charge as part of the plea bargain.

As this timeline shows, the statute of limitations ran for 357 days, comfortably within Article 578's two-year deadline for commencing trial. The State has shown "that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578." LA. CODE CRIM. PROC. art. 576. As the charge was not time-barred, Lavigne's counsel did not commit an error by failing to advise him that it was.

Because his first theory as to why his counsel's performance was ineffective fails, Lavigne can only satisfy the performance prong of *Strickland* by proving his alternate theory that trial counsel was ineffective for failing to tell him the second-degree kidnapping charge was brought outside the prescriptive period. We turn there next.

No. 23-30807

2.

Lavigne argues that his trial counsel was deficient during plea negotiations by failing to advise him that the kidnapping charge he was pleading to was time-barred.[1] Before analyzing trial counsel's advocacy under *Strickland*'s performance prong, we must determine the antecedent question of whether the kidnapping charge was time-barred.

Louisiana has a prescriptive period of six years for felony crimes that mandate imprisonment at hard labor for less than a life term. LA. CODE CRIM. PROC. art. 572(A)(1). Second-degree kidnapping is one such crime. *See* LA. STAT. § 14:44.1 ("Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years."). As Lavigne committed his crime in 1990, this six-year prescriptive period had run by 1996—nearly two decades before he was charged with second-degree kidnapping in 2016.

The State concedes this point, yet contends that another statutory provision changes the analysis: Article 576 of the Louisiana Code of Criminal Procedure. Article 576 constrains when new charges may be filed upon dismissal of a prosecution:

> When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent . . . a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.

---

[1] "Lavigne concedes, as he must, that the first indictment, for second degree murder, was timely filed because second degree murder contained no prescriptive period."

9

No. 23-30807

La. Code Crim. Proc. art. 576.

Under Louisiana law, "[t]here is no time limitation upon the institution of prosecution for any crime for which the punishment may be death or life imprisonment." La. Code Crim. Proc. art. 571. Thus, the State timely filed both the original prosecution—the March 26, 2013 charge of first-degree murder—and the second prosecution— the October 11, 2013 indictment for second-degree murder.  *See* La. Stat. § 14:30 (death or life imprisonment at hard labor for first-degree murder); La. Code Crim. Proc. art. 571; La. Stat. Ann. § 14:30.1 (life imprisonment at hard labor for second-degree murder).

For the third prosecution—the January 8, 2016 charges of manslaughter and second-degree kidnapping—to fit within Article 576's exception and be timely, it must be a prosecution of "a lesser offense based on the same facts" as the second-degree murder charge.[2]

At the time Louisiana and Lavigne entered the January 2016 plea, there were only two decisions to inform the trial court's and Lavigne's counsel's interpretation of Article 576: *State v. Murray*,  64 So. 2d 230 (La. 1953) and *State v. Powers*, 344 So. 2d 1049 (La. 1977).[3] *See Powers*, 344 So.2d

---

[2] There is no question the prosecution was dismissed by the district attorney with the defendant's consent as it was part of a plea bargain agreement. It is also clear that the new prosecution was not for the same offense; a second-degree murder charge was amended to charges of manslaughter and second-degree kidnapping.

[3] The magistrate judge relied heavily on *State v. Gray*, 2016-0687 (La. 3/15/17), 218 So. 3d 40. The State relies on the case, and Lavigne tries to distinguish it. Regardless of what *Gray* says, it was not published until 2017 and could not have informed counsel's understanding of the relevant statutory code during the plea-bargaining process that culminated in 2016. Thus, as we try to make our best *Erie* guess as to what Louisiana law was at the time, we cannot consider *Gray*'s holding. The magistrate judge and district court judge should not have either.

at 1052 ("*State v. Murray*, [] which is the only case which we have found that specifically interprets this language.").

*Murray* is not very useful to our analysis here. In *Murray*, the court analyzed the same offense (two bills of information charging theft), while here there are two different offenses (first second degree murder and second-degree kidnapping). As a result, in *Murray* the Louisiana high court did not address or give insight into the question at issue here: What are the proper bounds of a lesser offense based on the same facts?

*Powers* dealt with two different offenses, making it more relevant to our analysis. *Powers* held that:

> [B]ecause these were two separate crimes which occurred at different times and which contained separate elements (even though they were admittedly both part of one extended criminal transaction) . . . the charges for aggravated burglary and conspiracy to commit aggravated burglary[, the second charge,] were not 'the same or . . . lesser offense(s) based on the same facts' as the charges for armed robbery and conspiracy to commit armed robbery.

344 So.2d at 1052.

However, unlike in *Powers* where there was a clean break between one crime and the other (pre- and post-victim's arrival), here we have no facts as to the order of events because the State failed to clearly articulate what facts undergirded the second-degree murder charge. This poorly-developed record makes it difficult to determine whether the second-degree kidnapping charge is based on the same facts. That, in turn, makes it difficult to figure out if the new charge was time-barred.

Since there were no facts put forth to support the second-degree murder charge, it is unclear how the new charge can be based "on the same facts." This brings us under the purview of the 1966 Official Revision

No. 23-30807

Comment, which states that "if a second charge involves additional facts, then it cannot be said to be based on the same facts and the first charge does not interrupt prescription." LA. CODE CRIM. PROC. art. 576 cmt. a. If the first charge contains no facts, then the second charge necessarily "involves additional facts." Thus, the second charge is not "based on the same facts," meaning the first charge does not interrupt prescription. Therefore, the six-year prescriptive period for second-degree kidnapping lapsed.

"Given that the time limitations for instituting prosecution . . . had prescribed, relator's trial counsel rendered ineffective assistance when he failed to file a motion to quash on that basis." *State ex rel. Nalls v. State*, 2013-2806, p. 1 (La. 11/7/14), 152 So.3d 164. Per *Nalls*, Lavigne meets the first prong of the *Strickland* test since his trial counsel's performance was deficient.[4]

The second prong of *Strickland* requires that Lavigne show that his trial counsel's deficiency prejudiced him. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To fulfill the prejudice prong, Lavigne must show "that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 59). "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome;' a defendant need not, however, show that 'counsel's deficient conduct more likely than not altered the outcome of the case.'" *Martin v. McCotter*, 796 F.2d 813 (quoting *Strickland*, 466 U.S. at 694). As a habeas petitioner, Lavigne "must

_____

[4] This is so despite giving great deference to counsel's exercise of professional judgment and taking every effort to eliminate the distorting effects of hindsight. *Martin v. McCotter*, 796 F.3d 813, 816–17 (5th Cir. 1986).

No. 23-30807

'affirmatively prove,' not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).

Taken together, Lavigne must affirmatively prove prejudice, i.e., that there is a sufficient probability that counsel's errors so impacted his defense that it undermines our confidence he would have accepted the plea instead of having insisted on going to trial.

To meet his burden, Lavigne asserts he "would not have pled to the second degree kidnapping charge had he been properly advised that it was prescribed," and cites several instances where he has maintained this position. Instead, Lavigne says that he "would have negotiated a plea to only manslaughter or proceeded to trial on the second degree murder charge."

First, Lavigne points out he attempted to withdraw his plea at the sentencing hearing, even before the court imposed sentence on the time-barred kidnapping charge. But Lavigne did not know the charge was time-barred at that time. Instead, he attempted to withdraw from the plea because the sentences were consecutive. Thus, this fact fails to support a finding that he would not have pled because the offense was time-barred.

Second, Lavigne notes that upon learning that the kidnapping charge was time-barred, he filed a pro se motion to quash and argues that this "demonstrates that knowledge of the time bar would have affected his plea." We disagree.

The situation had drastically changed by the time Lavigne filed the motion to quash. As explained below, Lavigne and his counsel filed sworn declarations that Lavigne entered the plea deal because he believed he would get consecutive twenty-one-year sentences and likely only serve ten-and-half years. This was advantageous for Lavigne because if he had not pled down to the manslaughter and kidnapping charges, he faced a charge of second-degree murder, which carries a life sentence at hard labor without benefit of parole,

13

probation, or suspension of sentence. By the time he filed the motion to quash, Lavigne had already been sentenced to sixty-one years for the manslaughter and kidnapping charges. At that point the calculus changed.

Before the sentencing, Lavigne was weighing a twenty-one-year sentence with less time served against the prospect of a life sentence if he went to trial. At the time he filed the motion to quash, Lavigne was weighing serving his sixty-one-year sentence, which he calls basically a life sentence, against going to trial to avoid a "true" life sentence. We do not doubt that between life in prison (the actual outcome of the plea deal) and even a small chance of not getting life by going to trial, that Lavigne would choose trial. But that says little, if anything, about his original calculation: pleading and serving approximately ten-and-a-half years (albeit including a time-barred charge) or going to trial and risking spending life in prison without the possibility of parole, probation, or suspension of sentence.

We are not convinced there is a reasonable probability that Lavigne would not have entered the plea deal because one of the charges was time-barred given how advantageous the plea could have been—and Lavigne alleges he was assured it would be.

Third, Lavigne submits that he filed a sworn affidavit in state habeas proceedings which attests that he would not have pled guilty had he known the charge was time-barred. But the necessary proof to support an ineffective-assistance-of-counsel claim cannot come from "*post hoc* assertions from a defendant about how he would have pleaded but for attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, we "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* However, no such evidence exists.

Lavigne is tasked with offering affirmative proof that counsel's error "actually had an adverse effect on the defense," *Strickland*, 466 U.S. at 693,

and he would not have accepted the plea. *Day v. Quarterman*, 566 F.3d at 536; *but see United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995) ("Hansel's waiver of the time-bar defense cannot be deemed knowing and intelligent: we may assume that he would not have pled guilty to counts that he knew to be time-barred."). Affirmative proof requires pointing to evidence that supports his claim. Lavigne does not point to any such proof that undermines our confidence that he would have taken the plea. Therefore, Lavigne's claim that his trial counsel was ineffective for failing to advise him that the kidnapping charge was time-barred fails at the second *Strickland* prong.

In short, insofar as Lavigne's ineffective-assistance-of-counsel claim turns on counsel failing to advise him that the charge he was pleading guilty to was time-barred, it is foreclosed because he has failed to offer affirmative proof that he would not have taken the plea deal and insisted on going to trial had he known the charge was time-barred. Therefore, the district court properly concluded that Lavigne's ineffective-assistance-of-counsel claim fails under *Strickland*.

II.    *Whether the district court erred in denying Lavigne an evidentiary hearing*

Lavigne contends that the district court erred in denying him an evidentiary hearing where he could develop facts about his interactions, discussions, and relationship with his trial counsel even though he "specifically alleged facts that, if proven, would entitle him to habeas relief."

This court has consistently held that "when there is a 'factual dispute, that, if resolved in the petitioner's favor, would entitle her to relief and the state has not afforded the petitioner a full and fair evidentiary hearing,' a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing." *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) (cleaned up) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)); and collecting authority).

No. 23-30807

However, "[i]f the applicant has *failed* to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim."[5] 28 U.S.C. § 2254(e)(2) (emphasis supplied). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000); *accord Shinn v. Ramirez*, 596 U.S. 366, 383 (2022); *Austin v. Davis*, 876 F.3d 757, 798–99 (5th Cir. 2017).

The district court found that "under the facts of this case, due diligence required offering an affidavit of trial counsel in the state habeas proceedings." *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) ("Dowthitt did not present affidavits from family members and did not show that they could not be obtained absent an order for discovery or a hearing . . . . A reasonable person in Dowthitt's place would have at least done as much." (internal quotation marks removed)).

Lavigne tries to distinguish *Dowthitt*. He contends that "*Dowthitt* only requires a *pro se* habeas petitioner submit affidavits in state court for witnesses that can be easily obtained by the prisoners," while this "case involves the testimony of an adversary witness . . . concerning that witness's own ineffective assistance of counsel." This is persuasive. Unlike the "willing"

---

[5] There are two exceptions to this statutory command. First, if the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2254(e)(2)(A)(i). Second, if the application shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence. *Id.* at § 2254(e)(2)(A)(ii). If the habeas petitioner has met either of those, he must also show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* at § 2254(e)(2)(B). Neither of these exceptions is relevant to the present case.

family members in *Dowthitt*, 230 F.3d at 758, Lavigne represents his trial counsel "is not a 'willing' witness and her affidavit could not be 'easily obtained.'" After all, as a "*pro se* prisoner, he had no ability to interview his trial counsel—the very person whose ineffectiveness he was challenging."

The district court is correct that "[i]f a prisoner has 'failed to develop the factual basis of a claim in State court proceedings,' a federal court 'shall not hold an evidentiary hearing on the claim' unless the prisoner satisfies one of two narrow exceptions, *see* 28 U.S.C. § 2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence 'by clear and convincing evidence,' § 2254(e)(2)(B)." *Shinn*, 596 U.S. at 371; *accord Morris v. Dretke*, 413 F.3d 484, 489 (5th Cir. 2000).

But "§ 2254(e)(2) applies only when a prisoner "has failed to develop the factual basis of a claim." *Shinn*, 596 U.S. at 382 (emphasis added) (quoting § 2254(e)(2)(A)). "We interpret 'fail,' . . . to mean that the prisoner must be 'at fault' for the undeveloped record in state court. A prisoner is 'at fault' if he 'bears responsibility for the failure' to develop the record." *Id.* (internal citation omitted) (discussing *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); and quoting *Williams*, 529 U.S. at 432).

Yes, an "affidavit from [Lavigne]'s trial counsel would of course be very helpful, but the government has not obtained such an affidavit and it is not clear how [Lavigne] could have obtained it" as a pro se litigant who had his requests for an evidentiary hearing denied repeatedly. *United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013). Lavigne could not compel his attorney—the target of his ineffective-assistance-of-counsel claim—to submit an affidavit. So, he did what he could as a diligent inmate in that position: asked for an evidentiary hearing, where a court—which does have the power—could compel his state trial counsel to testify.

As there is no lack of diligence or greater fault that would make Lavigne bear the responsibility for the record being underdeveloped, Lavigne did not *fail* to develop the factual basis of his claim. Thus, the § 2254(e)(2) bar does not apply.

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S.465, 468 (2007). We review the district court's denial of an evidentiary hearing for abuse of discretion. *Reed*, 719 F.3d at 373–74 (citing *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006)); *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998).

The district court "decline[d] to discretionarily hold an evidentiary hearing under the 28 U.S.C. § 2254(e)(2) exception." But as we just explained, the § 2254(e)(2) bar does not apply, meaning the district court's ruling is premised on an error of law and thus constitutes an abuse of discretion that warrants remand. *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015).

In making this discretionary determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. Yet, the district court did not consider this. That is legal error and independently warrants remand. *See Deepwater Horizon*, 785 F.3d at 999.

True, when the district court has "'sufficient facts before it to make an informed decision on the merits of [the habeas petitioner's] claim,' it does not abuse its discretion in failing to conduct an evidentiary hearing." *Dowthitt*, 230 F.3d at 758 (quoting *Barrientes v. Johnson,* 221 F.3d 741, 770 (5th Cir. 2000); and citing *United States v. Fishel,* 747 F.2d 271, 273 (5th Cir.

1984) ("Where, as here, allegations contained in a habeas petition are either contradicted by the record or supported by conclusory factual assertions incapable of being tested in an evidentiary hearing, no hearing is required.")).

But the district court made no factual findings and did not conclude that Lavigne's allegations were false. Nor does it seem it could have.

In his § 2254 motion, Lavigne contends that his counsel rendered ineffective assistance by erroneously telling him that he would be sentenced to a twenty-one-year sentence for the crime of aggravated kidnapping concurrent to a twenty-one-year sentence for manslaughter. In his signed affidavits, Lavigne insists that he would not have accepted the plea deal but for counsel's erroneous guidance.

True, "speculative and unsupported accusations of government wrongdoing do not entitle a defendant to an evidentiary hearing." *Reed*, 719 F.3d at 374. And we do not allow "mere contradiction" of a defendant's statements; instead, we typically require "specific factual allegations supported by the affidavit of a reliable third person." *Id.*

But Lavigne's allegations are not speculative, conclusory, or unsupported. In his sworn affidavit, Lavigne makes a specific factual claim based on personal knowledge: that he was told his sentence would be no more than twenty-one years. Lavigne's federal postconviction counsel has similarly submitted a corroborating sworn affidavit, in which he attests he is prepared to call Lavigne's state trial counsel, Susan Jones, to establish that "Lavigne only accepted the plea deal after he was told by his attorneys that he would receive a total sentence of 21 years and that Judge Leblanc had agreed to impose that sentence." This affidavit, an "independent indic[ium] of the likely merit" of Lavigne's allegations, entitles him to an evidentiary hearing on the issue. *Id.* at 373 (citing *United States v. Cavitt,* 550 F.3d 430, 442 (5th Cir. 2008)); *accord Cervantes*, 132 F.3d at 1110.

Postconviction counsel's affidavit recounts the alleged sequence of events:

- At the time of the plea, Lavigne was fifty years old and would not agree to any plea deal that would result in a sentence over twenty-one years (ten-and-a-half years served) as that would amount to an effective life sentence in his eyes.

- Lavigne expressed concern about the language he was being asked to sign in the "Boykin Form." In response to Lavigne's concerns, his attorneys left the lock-up and went and met with Judge Leblanc, who agreed to impose a twenty-one-year concurrent sentence on the kidnapping charge for a total sentence of twenty-one years. Lavigne's attorneys returned to the lock-up and informed Lavigne that, notwithstanding the language in the plea, he would receive a total sentence of twenty-one years. Based on that advice and assurance of the total sentence, Lavigne agreed to go forward with the plea deal.

- Just prior to appearing before Judge Leblanc on April 18, 2016, Lavigne's attorneys informed him that they just learned from Judge Leblanc that she did not intend to honor her agreement to impose a twenty-one-year concurrent sentence and, instead, had now decided to impose a forty-year consecutive sentence, for a total sentence of sixty-one years. Lavigne expressed outrage to his attorneys because he never agreed to, nor would he have ever agreed to, a sentence of longer than twenty-one years.

- During the sentencing hearing, Lavigne's counsel informed the court that Lavigne would like to withdraw the plea because he was under the impression that he would serve concurrent twenty-one-year sentences.

These are specific and concrete factual allegations. These affidavits, therefore, "constitute[] competent evidence sufficient, if believed, to establish that counsel in fact made such a prediction." *Reed*, 719 F.3d at 374. Given this evidence, the record does *not* "conclusively show that the prisoner is entitled to no relief," so Lavigne's motion brought under 28 U.S.C. § 2254 cannot be denied without a hearing. *Id.* at 373 (quoting *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir.1992) (per curiam)).

"Moreover, it is hard to imagine what additional evidence [Lavigne] could present to establish what his trial counsel told him in a presumably private conversation." *Id.* at 374. "An affidavit from [Lavigne]'s trial counsel would of course be very helpful, but the government has not obtained such an affidavit and it is not clear how [Lavigne] could have obtained it" as a pro se litigant who had his requests for an evidentiary hearing denied. *Id.* Lavigne's request before the federal court is also supported by "a reliable third person," his postconviction counsel. Affidavits from other third parties "would seemingly be useless here; even if [Lavigne] relayed counsel's prediction to others, their testimony would be hearsay and therefore inadmissible to prove that counsel had in fact made the prediction." *Id.*

Furthermore, the record "contains an inconclusive colloquy" on the alleged promise "in which his counsel talked around the issue without stating whether or not [s]he made such a representation." *Davis v. Butler*, 825 F.2d 892, 894–95 (5th Cir. 1987). When the state district court reconvened on April 18, 2016 to sentence Lavigne on the kidnapping charge, the court asked: "Are we ready to take up the *State versus Kenneth Lavigne* matter?" Mr. Hebert, one of Lavigne's state counsel, informed the Judge that "we need to approach" and then he and Ms. Jones, Lavigne's other counsel, approached and had an off-the-record bench discussion. After, the following conversation ensued between the Court, Lavigne's counsel, and Ms. O'Bannon, the Assistant District Attorney:

**Ms. O'Bannon:** Your Honor, for the record, this is *State versus Kenneth Lavigne*, set for sentencing today.

**The Court:** Yes. Mr. Hebert and Ms. Jones, I understand you have a motion that you wish to make today.

**Ms. Jones:** Yes, Your Honor. We have talked to our client and he at this time wants to withdraw his plea that he entered on – he already, of course, was sentenced on the Manslaughter, but withdraw his plea on the Kidnapping charge.

**Ms. O'Bannon:** The state would object.

**The Court:** Okay.

**Ms. O'Bannon:** Simply because he's not satisfied with what the "Presenting Investigation Report" recommended is no basis upon which to withdraw a plea. He knowingly and intelligently waived his rights and entered the plea.

**The Court:** Okay.

**Ms. Jones:** And he, of course, is saying that he didn't and that he thought that—whether he's right or wrong, he thought that it would be run concurrent and that he never would have entered a plea if he knew it was going to be run consecutive.

**The Court:** Okay.

**Ms. O'Bannon:** Your Honor, the State never made any promises to him whatsoever. The plea was based on a "Presentence—

**The Court:** Pull that Boykin.

**Ms. O'Bannon:** — Investigation Report," and there was never any promises as to whether time would be running consecutive or concurrent —

**The Court:** Okay.

**Ms. O'Bannon:** — and he pled not knowing what his sentence would be.

**The Court:** Okay. The motion is denied. When I accepted the "guilty" plea from Mr. Lavigne, I went over ad nauseam, going over

No. 23-30807

rights, making sure he understood his rights, making sure that he spoke with his attorneys, making sure that he understood what the range of penalties could be. It was set with a PSI. The sentencing was left to the discretion of the Court. It could have run concurrent; it could have run consecutive. It could have been 21 years, which I think is what the agreement was: It would be no less than that. It could have been for 40 years. This Court made no promises that the sentence would be any certain sentence, and just because you're not happy with what the sentence may be today is not a good enough grounds.

At this point, Lavigne interjects. The transcript reads as follows:

**The Defendant:** That's —

**The Court:** I specifically —

**The Defendant:** — that's not what I was told.

**The Court:** — go over all of these rights with you whenever I take the plea, and if there's something you don't understand, at that point in time it needs to be said, and at that time I went over with you what the possible range of penalties could be. So, for that reason, I'm going to go ahead and sentence Mr. Lavigne at this time.

**Ms. Jones:** And just note —

**The Court:** Would you stand up, Mr. Lavigne?

**Ms. Jones:** Just note our objection for the record.

**The Court:** Objection is so noted for the record, Ms. Jones.

We will "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369. Instead, we "look to contemporaneous evidence to substantiate a defendant's express preferences." *Id.*

Here, Lavigne alleges that he told his counsel that he felt uncomfortable about the language in the plea deal, which prompted counsel to speak with the trial judge, before counsel returned and assured Lavigne he would be sentenced to twenty-one years. This is corroborated by Lavigne

23

contemporaneously objecting before his sentence was handed down because the PSR did not align with what he believed his counsel had represented.

Precisely what was said during these interactions is essential to any determination about whether trial counsel provided constitutionally deficient advice to Lavigne during the plea stage. "Because the content of the discussions between counsel and [defendant] were not in the record before the district court and the district court had no occasion to observe [defendant's] credibility during trial or otherwise, a live evidentiary hearing is necessary to dispose of [defendant's] 28 U.S.C. § 2255 motion where there is a disputed fact as to the content of those conversations." *United States v. Arguellas*, 78 F. App'x 984, 987 (5th Cir. 2003) (per curiam) (citing *Owens v. United States,* 551 F.2d 1053, 1054 (5th Cir. 1977) (per curiam)).

"[W]ithout additional evidence, we cannot say that 'the motion and the files and records of the case conclusively show that [Lavigne] is entitled to no relief.'" *Reed*, 719 at 374 (5th Cir. 2013) (quoting 28 U.S.C. § 2255(b)); *accord Davis*, 825 F.2d at 895 ("Davis's claim that his guilty plea was based on his attorney's assurance . . . should therefore be remanded for an evidentiary hearing"). Given "the incomplete record on [] relevant factors, the district court should have held an evidentiary hearing before dismissing the § 2255 application." *United States v. Rivas-Lopez*, 678 F.3d 353, 359 (5th Cir. 2012) (citing *United States v. Herrera,* 412 F.3d 577, 582 (5th Cir. 2005) (remanding for an evidentiary hearing on whether counsel performed deficiently)).

\*　　\*　　\*

Accordingly, we AFFIRM the lower court's finding that Lavigne failed to show that he experienced ineffective assistance of counsel under the *Strickland* standard pertaining to the time-barred claim, REVERSE the trial court's finding that Lavigne was not entitled to an evidentiary hearing on his

No. 23-30807

habeas petition about counsel's pre-plea assurances, and REMAND for further proceedings consistent with this opinion.